IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL NO. 3:22-cv-00536

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT FOR** |
| APPROXIMATELY $41,114.25 SEIZED FROM ) | **FORFEITURE IN REM** |
| SHARONVIEW FEDERAL CREDIT UNION ) | |
| ACCOUNT XXX134, SUCH ACCOUNT HELD ) | |
| IN THE NAME OF KWAKU AMPONSAH; ) | |
| ) | |
| APPROXIMATELY $92,446.23 SEIZED FROM ) | |
| BANK OF AMERICA ACCOUNT ) | |
| XXXXXXXX9310, SUCH ACOUNT HELD IN ) | |
| THE NAME OF IGNITE RENTALS, INC. ) | |

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

I. INTRODUCTION

1. This is a civil action *in rem* pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C). Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 18 U.S.C. §§ 981, 983, and 984, and the Federal Rules of Civil Procedure.

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned $40,114.25 in Funds seized from Sharonview Federal Credit Union Account XXX134, such account held in the name of Kwaku Amponsah ("the Amponsah Funds" and "the Amponsah Sharonview Account") and $92,446.23 in Funds seized from Bank of America Account XXXXXXXX9310, such account held in the name of Ignite Rentals INC ("the Ignite Funds" and

"the Ignite BofA Account") (all funds collectively referred to as "the Funds"). The Funds constitute or are derived from proceeds of wire fraud in violation of 18 U.S.C. § 1343, and property involved in monetary transactions, money laundering, and a money laundering conspiracy in violation of 18 U.S.C. §§ 1956, 1957, and 1956(h).

3. More specifically, the Funds constitute proceeds of a variety of scams, including romance, investment, and money mule scams perpetrated on United States' residents. The victims were often vulnerable due to the loss of a loved one and, as a result, sought online companionship, which the fraudsters dubiously provided. After the fraudsters gained the trust of the victims, the fraudsters duped the victims into wiring money to various accounts. Thereafter, the money was laundered and ultimately deposited into the Target Accounts until the United States Secret Service uncovered the scam and seized the Funds.

4. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a). The Court has *in rem* jurisdiction over the defendant Funds under 28 U.S.C. § 1355(b).

5. This Court has venue pursuant to 28 U.S.C. §§ 1355 and 1395. Venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district, the claim accrued in this district, and the defendant Funds were found in this district.

6. Specifically, in or about April 2022, the United States Secret Service ("USSS"), acting pursuant to a federal Seizure Warrant (WDNC Case 3:22mj182) for forfeiture, seized the Amponsah Funds in the Western District of North Carolina. Then, in or about May 2022, the USSS, acting pursuant to a federal Seizure Warrant (WDNC Case 3:22mj249-2) for forfeiture, seized the Ignite Funds in the Western District of North Carolina. The USSS in the Western District of North Carolina is currently holding the Funds.

7. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are set forth more fully as follows and have been verified by the attached Verification of USSS Special Agent Adam Newman, who has reviewed account records and interviewed a variety of individuals during the course of his investigation of the fraud and money laundering set forth herein.

## II. OVERVIEW

8. As set forth more fully below, during the times set forth herein, the Funds were derived from a variety of scams, including romance, investment, and money mule scams perpetrated on United States residents. These scams resulted in the deposit of fraud proceeds from these victim residents into one or more accounts, including accounts of business RH Goods and Services, controlled by Western District of North Carolina resident Kwaku Amponsah. Thereafter, the proceeds were moved from RH Goods and Services accounts directly to, among other locations, the Amponsah Sharonview Account and the Ignite BofA Account.

9. Further, in addition to the above deposits paid directly from RH Goods and Services into the Ignite BofA Account, RH Goods and Services has routed tens of thousands of dollars in money through an entity known as K Wall Auto Solutions to the Ignite BofA Account. USSS has not identified any legitimate business of K Wall Auto Solutions. Further, the individual purportedly involved in the operation of Ignite Rentals cannot explain why Ignite receives money from RH Goods and Services or Amponsah. The individual also provides explanations of business dealings in, among other places, Africa, that suggest that the Funds are involved in trade-based money laundering.[1]

---

[1] "[T]rade-based money laundering is defined as the process of disguising the proceeds of crime and moving value through the use of trade transactions in an attempt to legitimize their illicit origins." Financial Action Task Force, *Trade-Based Money Laundering* (June 23, 2006), available at https://www.fatf-gafi.org/publications/methodsandtrends/documents/trade-basedmoneylaundering.html.

3

10. The flow of money from victims to RH Goods and Services to and through the Target Accounts was generally as follows:



## III. THE FRAUD SCHEME

**A. Amponsah, RH Goods and Services, K Wall Auto Solutions, and Ignite**

11. Since 2021, USSS has been investigating, among other individuals and entities, Kwaku Amponsah, RH Goods and Services, K Wall Auto Solutions and Procurements, and Ignite Rentals. The individuals and entities are described as follows:

    i. **Kwaku Amponsah:** Amponsah is a resident of Charlotte, North Carolina, within the Western District of North Carolina. Amponsah has used one or more business accounts under his control and in the name of RH Goods and Services to receive funds derived from one or more fraud schemes.

    ii. **RH Goods and Services[2]:** According to the North Carolina Secretary of State website, "RH Goods and Services" is an assumed business name and Kwaku Amponsah is the listed owner. The documents available on the website list a business address of 1511 Peachcroft Road, Charlotte, NC, which is within the Western District of North Carolina.

Law enforcement has not identified legitimate business activity by RH Goods and Services. Specifically, a public domain Internet search for the name of RH Goods and Services did not reveal any website or information that would generally be available for a legitimate business. Further, the 1511 Peachcroft Road address listed on the online Secretary of State documents is the address for a residential home.

Amponsah has held at least five accounts using the business name of RH Goods and Service or RH Goods and Services at First Citizens Bank and Trust, First National Bank of Pennsylvania, JPMorgan Chase Bank, PNC Bank, and Truist Financial. A

---

[2] The precise name and use of the plural, "Services," verses the singular, "Service," in the entity name varies. For simplicity, unless otherwise noted herein, the Government simply refers to the entity as "RH Goods and Services."

preliminary analysis of the account records revealed approximately $1.2 million dollars in deposits into the accounts. To-date, law enforcement has confirmed that no less than $994,150 of these deposits were derived from fraud victims. As detailed more fully below, some of this money was funneled from RH Goods and Services to, among other individuals and entities, Kwaku Amponsah, K Wall Auto Solutions and Procurements, and Ignite Rentals.

      iii.    **K Wall Auto Solutions and Procurements:** K Wall Auto Solutions and Procurements LLC was incorporated in September 2021 in the state of Illinois by Lidia Antczak with an address at 309 Birchwood Lane in Bloomingdale, Illinois. The Illinois Secretary of State does not list the nature of business.

Law enforcement has not identified legitimate business activity by K Wall. Specifically, a public domain Internet search for the name of "K Wall Auto Solutions and Procurements LLC" did not reveal any website or information that would generally be available for a legitimate business. Further, the 309 Birchwood Lane address listed on the online Secretary of State documents is the address for a residential home.

      iv.    **Ignite Rentals:** Ignite Rentals was incorporated in September 2021 in the state of Maryland by Bezaleel Owusu with an address at 6700 Alexander Bell Drive in Columbia, Maryland. Per the Maryland Secretary of State, the business purports to be a heavy equipment rental company, renting items such as bulldozers and cranes. SA Newman has interviewed Owusu, who suggested that Ignite Rentals was involved in leasing heavy equipment, such as bulldozers, in Ghana, as well as the purchase and sale of heavy equipment parts in the United States.

B.  The Victims and Money Mules

12. In 2021, based on reports of fraud committed by another entity identified herein simply as "the Suspect LLC," SA Newman identified and telephonically interviewed twenty victims and one "money mule" tied to deposits into accounts controlled by the Suspect LLC. While investigating the Suspect LLC, SA Newman received information from victims that victims had forwarded money, not only to the Suspect LLC, but also to Amponsah's entity, RH Goods and Services.

13. As a result, SA Newman interviewed seventeen more individuals whose accounts have provided at least $994,150 in deposits into accounts controlled by Amponsah. All those interviewed stated that they were victims of fraud involving relationships initiated through the internet. The victims reported similar fraud schemes—involving variations of romance, investments, or help moving money—to those described by the victims interviewed regarding the Suspect LLC. Some examples of the results of the victim interviews are as follows:

> i. **SD:** SA Newman contacted an individual identified herein as SD of Lexington, Virginia, regarding financial transactions made to the RH Goods and Services account held at PNC Bank. SD stated that he met a woman online through Facebook and that she purported to be Whitney Mills. SD advised that Mills approached him with an investment opportunity. Mills led SD to believe that Mills was involved with a large contract with a chocolate company and that, if SD invested, he would receive a thirty percent return on his investment. SD advised that he emptied out his retirement account and sent a total of four wires pursuant to the representations of Mills. Two wires totaling $42,000 came from SD's personal account to RH Goods and Services; one wire totaling $150,000 was issued from his business account to RH Goods and Services; and one wire

for $50,000 went to an account in another state. SD stated that he never received anything from RH Goods and Services.

  ii. **TL:**  SA Newman also contacted an individual identified herein as TL of Houston, Texas, regarding financial transactions made to the RH Goods and Services account held at Truist Financial. TL stated he was a widower who believed he was in an online romantic relationship with a woman who was currently in Africa. TL was convinced to help the woman in Africa acquire an inheritance by providing funds to pay for transport costs and taxes. TL stated he wired funds on three separate occasions to RH Goods and Services; the first a $15,580 transaction to an account held at First National Bank of Pennsylvania and the second and third ($15,000 and $19,000) transactions to an account held at Truist Financial. TL stated that he received nothing in return for the wires.

  iii. **FF:**  SA Newman also contacted an individual identified herein as FF of Culver City, California, regarding transactions made to a RH Goods and Services account held at Truist Financial. FF expressed embarrassment about being in this situation and was reluctant to share extensive details. FF said that, after his life partner passed away, he met a man online who preyed upon his being a widower. FF believed he was helping his new online romantic partner recover gold from another country. FF stated that he kept being asked to pay taxes and storage fees, which he did each time the gold was purportedly moved between cities such as London, Amsterdam, and now New York City. FF said that he is being asked for more money, but that he no longer has any money. FF was led to believe that he and his online romantic partner were going to be together once the gold was in the United States. FF confirmed that he sent $150,000 to a RH Goods and Services account held at Truist Financial. He claimed that an additional $110,000 was submitted to a

8

business named Upfreight LLC, which he believes is located in Florida. FF stated that he never received anything for his money.

  iv. **GM:** SA Newman also contacted an individual identified herein as GM of Gainesville, Florida, regarding financial transactions made to an entity identified as EA Dealership. GM advised that, shortly after his wife passed away, he met and developed a relationship with a woman on Facebook who purported to be Diana James. GM was led to believe that James was a Belgian national who inherited 480 kilograms of gold bars. GM believed that he was helping her import the gold into the United States. In exchange for his financial help, GM was supposed to receive $1 million. GM advised that he has submitted more than $200,000 in funds trying to bring this investment to the United States. GM confirmed that he submitted the $38,000 wire to EA Dealership. GM also submitted a $53,000 Cashier's Check to RH Goods and Services. GM advised that he is a victim of fraud and has not received any of the promised goods or services from either EA Dealership or RH Goods and Services.

  v. **GE:** SA Newman also contacted an individual identified herein as GE of Kansas City, Missouri, regarding financial transactions GE made to RH Goods and Services. GE stated that he had recently discovered that he was a victim of fraud and had reported the fraud to the Kansas City Police Department. GE explained that he began an online relationship with a woman who convinced him to provide funds to retrieve an overseas inheritance. GE stated that he provided $40,000 of his personal savings. GE stated he began to receive checks in the mail and was asked to deposit them and forward the money to various persons. GE estimated that $100,000 in additional funds passed through his account. GE provided funds to RH Goods and Services.

vi. **RMO:** SA Newman also contacted an individual identified herein as RMO of Rancho Santa Margarita, California, regarding financial transactions made to RH Goods and Services. RMO confirmed that she wired $50,000 to RH Goods and Services. She indicated that a family friend approached her about an investment opportunity. This opportunity involved more than $100 million in gold, gems, and land. RMO invested. RMO advised that others, including her mother, had also invested. RMO estimates she has invested more than $5 million total.

vii. **MM:** SA Newman also contacted an individual identified herein as MM of Grand Rapids, Michigan, regarding financial transactions made to RH Goods and Services. MM advised that he had met a woman named Samantha (LNU) via Facebook a few years ago. MM believed that Samantha was from United Kingdom and possessed a large amount of gold. MM thought that, when he sent money pursuant to the woman's request, he was helping pay for passage for her and the gold to the United States. MM stated that he never received anything from RH Goods and Services for his money, and that Samantha and the gold never arrived. MM confirmed that he made three wire transfers to RH Goods and Services for a total of $26,500.

viii. **NB:** SA Newman also contacted an individual identified herein as NB of Columbus, Ohio, regarding a financial transaction made to RH Goods and Services. NB advised that he is a victim of fraud. NB advised that he had befriended someone via the internet who asked for his assistance to pay taxes on a bank account in the UAE. NB was advised that UAE had frozen the bank account of a relative of his friend and that, if the taxes were paid, the funds would be released. NB advised that he sent $30,000 to RH

10

Goods and Services and an additional $22,000 to a different bank account. According to NB, after he made the second payment, he realized he was being scammed.

C. **Interview of Amponsah**

14. Ultimately, Special Agent Newman interviewed Amponsah, who suggested that RH Goods and Services was involved in purchasing cars for and/or shipping goods on behalf of clients to Africa, but who could not provide details on the business, how the business obtained clients, or what cars or goods the business actually purchased. Instead, Amponsah suggested that he was a go-between and that accounts that he controlled would receive money and that people would provide him with instructions on what to do with the money.

15. Amponsah admitted that RH Goods and Services had held numerous bank accounts, including prior accounts at Chase, PNC, First Citizens Bank, Truist, and First National Bank. Amponsah advised that he had not conducted business with individuals in the names of the victims that SA Newman provided—the same victims who had supplied hundreds of thousands in deposits to RH Goods and Services accounts.

16. Amponsah provided information related to his account held at Truist Financial. Amponsah stated that he used the funds he received in his Truist account to purchase Cashier's Checks in the following amounts and to the following recipients: $40,000 to Ignite Rentals Inc., $20,000 to PassionStarts LLC, and $37,000 to K Wall Auto Solutions. Amponsah stated that, after receiving the Cashier's Checks, he went to a local branch of Bank of America and deposited the checks into the accounts for those companies. Amponsah stated that he did not conduct any business with these companies other than deposit money. Amponsah claimed that he was just following the instructions he received from his contacts in Ghana.

11

Case 3:22-cv-00536-RJC-DSC   Document 1   Filed 10/05/22   Page 11 of 17

### D. Financial Analysis

17. USSS has conducted analysis of numerous accounts—related to activity of Amponsah, RH Goods and Services, and Ignite LLC—in which fraud proceeds have been deposited and through which fraud proceeds have moved. The following is a summary of the analysis of account records specific to the Funds in the Target Accounts:

#### *The RH Goods and Services PNC Account*

18. During the course of the activity identified by victims and money mules above, RH Goods and Services maintained an account at PNC Bank ("the RH PNC Account").

19. In August 2021, Amponsah opened the RH PNC Account.

20. Between August 2021 and the end of January 2022, approximately $448,886.88 was deposited via wire transfers into the RH PNC Account. Five victims, including GE, RMO, MM, and NB, were identified and reported fraud loss through the PNC account for $310,600.

21. As noted in more detail below, in December 2021, the RH PNC Account funded a $30,000 check deposit into the Amponsah Sharonview Account that is the subject of this Complaint. Further, one or more cash withdrawals from the RH PNC Account coincide with cash deposits into the Amponsah Sharonview Account that is the subject of this Complaint.

#### *The RH Goods and Services Truist Account*

22. During the course of the activity identified by victims and money mules above, RH Goods and Services also maintained an account at Truist Financial ("the RH Truist Account").

23. Between the opening of the RH Truist Account on January 14, 2022 and March 30, 2022, the RH Truist Account received at least approximately $240,095.00 in deposits. Of this amount, at least approximately $237,000 was derived from various fraud schemes, including the

12

schemes articulated by the victims described herein. The bulk of the funds in the RH Truist Account were derived from several wires and one large check deposit, including the following:

| DATE | AMOUNT | DEPOSIT TYPE | VICTIM SOURCE |
|---|---|---|---|
| January 21, 2022 | $53,000 | Check | GM |
| February 10, 2022 | $15,000 | Wire | TL |
| February 14, 2022 | $19,000 | Wire | TL |
| March 7, 2022 | $150,000 | Wire | FF |

As noted above, in some instances, the transactions into the account correlate directly with fraud reported by victims and discussed above.

24. Following the deposits, on March 9, 2022, Amponsah withdrew $97,000 in cash and received Cashier's Checks payable in amounts of $37,000 to K Wall Auto Solutions, $20,000 to PassionStarts LLC, and $40,000 to Ignite Rentals, whose account is a subject of this Complaint.

*The Amponsah Sharonview Account*

25. The bulk of the funds deposited into the Amponsah Sharonview Account prior to execution in April 2022 of a Seizure Warrant on the account were derived from three cash deposits and two check deposits as follows:

| DATE | AMOUNT | DEPOSIT TYPE |
|---|---|---|
| November 11, 2021 | $ 5,200 | Cash Deposit |
| December 29, 2021 | $30,000 | PNC Check Deposit |
| January 26, 2022 | $12,000 | Wells Fargo Check Deposit |
| February 22, 2022 | $6,000 | Cash Deposit |
| March 1, 2022 | $3,000 | Cash Deposit |

13

Per Sharonview Federal Credit Union records, the $5,200 cash deposit occurred one day after Amponsah conducted a $6,500 cash withdrawal from the RH PNC Account. And, the $30,000 check deposit consisted of a PNC Cashier's Check funded by the RH PNC Account and to Kwaku Amponsah. Finally, the $12,000 check was issued by Wells Fargo to Kwaku Amponsah with the remitter listed as Kwaku Amponsah.

### *The Ignite BofA Account*

26. The Ignite BofA Account was opened in December 2021.

27. The Ignite BofA Account was funded on December 28, 2021 with a $30,000 wire deposit.

28. Then, in January 2022, the Ignite BofA Account received eight deposits totaling $30,100. Most of the deposits were received from K Wall Auto Solutions. As noted above, KWall Auto Solutions does not engage in any apparent legitimate business, Amponsah advised that he funded K Wall Auto Solutions, and bank records confirm that K Wall Auto Solutions has been funded by the RH Truist Account that was, in-turn, funded by fraud proceeds.

29. In February 2022, the Ignite BofA Account received thirteen deposits for approximately $178,000. All but two of these thirteen deposits were for whole dollar amounts, which is unusual for a company that purportedly conducts legitimate business.

30. In March 2022, the Ignite BofA Account received twelve deposits totaling approximately $189,000. All twelve of these deposits were for whole dollar amounts and included a $40,000 deposit conducted by Amponsah and funded by the RH Truist Account, an account which was, in-turn, funded by fraud proceeds. Further, shortly after K Wall Auto Solutions received a $37,000 deposit from Kwaku Amponsah, the Ignite BofA Account received a $20,000 transfer from K Wall Auto Solutions.

14

31. During his interview with SA Newman, Owusu confirmed that the Ignite BofA Account received a $40,000 deposit on March 9, 2022. Owusu claimed that he had a deal to lease two excavators in Ghana, initially to a company called K Wall, but later stated this specific deal was with Samuel Nkansah and his US based partner Poku Kellyson. Owusu claimed that he provided his bank account information to this person who then arranged to have the $40,000 deposited into his account. Owusu admitted he did not confirm the source of the funds, and that he only reviews his account to see that funds have been deposited and relies on the bank to know whether the funds are fraudulent. Owusu stated he did not do any business with RH Goods and Services or Kwaku Amponsah and had never heard of them.

32. In May 2022, USSS obtained a Seizure Warrant for the contents of Ignite BofA Account and ultimately seized the Ignite Funds[3].

## IV. CONCLUSION

33. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Funds vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

2. Judgment be entered declaring the Funds to be condemned and forfeited to the

---

[3] USSS has seized other funds during the course of the investigation that are not addressed in detail herein. Instead, this Complaint only addresses those funds that were seized, processed for administrative forfeiture, and claimed by one or more individuals or entities, thus necessitating this civil judicial forfeiture Complaint.

United States of America for disposition according to law; and

3. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Funds as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 5th day of October, 2022.

DENA J. KING
UNITED STATES ATTORNEY

**s/Benjamin Bain-Creed**
FL Bar Number 21436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Facsimile: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

## VERIFICATION

Adam Newman deposes and says under penalty of perjury:

I am a Special Agent with the United States Secret Service and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

*Adam Newman*
Adam Newman
Special Agent
United States Secret Service